IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JANINE ALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:14-cv-01615 (AJT/JFA) |
| | ) |
| ELI LILLY AND COMPANY, an Indiana Corporation, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Presently pending in this case and the action styled *Gilda Hagan-Brown v. Eli Lilly and Company*, 1:14-cv-1614, are Plaintiff's Motion to Transfer the Case to the Southern District of Indiana ("the Motion") [Doc. Nos. 21 and 23] pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the Court will defer ruling on the Motion pending the completion of discovery, as of which time the Court will be in a better position to assess the state of the docket in the Southern District of Indiana with respect to Cymbalta withdrawal cases.

Plaintiffs in this and the *Hagan-Brown* case, both represented by the same counsel, filed their respective complaints in this Court on November 26, 2014. In these cases, Plaintiffs claim that they suffered injuries and damages as a result of their discontinuing their use of the drug Cymbalta, an anti-depressant, manufactured and marketed by defendant Eli Lilly and Company ("Lilly"). They also allege that Lilly acted negligently and fraudulently in the design, manufacturing, marketing, promoting and labeling of Cymbalta and by inadequately warning healthcare providers and patients about the symptoms associated with its discontinuation. According to Plaintiffs, as of the date of the pending Motion, there were forty-seven (47) Cymbalta withdrawal cases filed in twenty-nine (29) different federal courts. Doc. No. 24-1.

In August 2014, Plaintiffs' counsel file a request with The U.S. Judicial Panel on Multidistrict Litigation (MDL) to centralize all pending Cymbalta withdrawal cases in the Central District of California, where there was then pending the largest number of Cymbalta withdrawal cases with the most mature dockets. Lilly opposed the creation of the MDL, arguing that individual fact issues predominate over common factual questions across the various cases and that centralization was not necessary because informal cooperation between counsel could realize the same efficiencies as an MDL.

On December 10, 2014, the MDL Panel decided against certifying the Cymbalta withdrawal cases for MDL transfer, citing three reasons for the denial. *In re Cymbalta Products Liab. Litig.*, MDL No. 2576, 2014 WL 7006713 (J.P.M.L0. Dec. 10, 2014). First, while the panel agreed that the actions "are highly similar," the panel noted that the procedural posture of the previously filed actions varies significantly, with three cases having been filed in mid-2013 and then 22 actions commencing in August 2014. *Id.* at *1. Second, and relatedly, common discovery had already taken place in the three earlier filed cases. *Id.* Third, the panel observed that essentially only two firms represent plaintiffs in all constituent actions, and one firm represents Lilly, so "informal coordination ... should be practicable." *Id.* at *2.

With its motion for an MDL having been denied, Plaintiffs faced what they call "a logistical nightmare" of litigating 47 filed cases in 29 different courts,[1] with the need to file

---

[1] Although not entirely clear from the briefing, it appears that at the time the request for MDL certification and transfer to the Central District of California, there were a total of 25 Cymbalta withdrawal cases pending throughout the country and that after the MDL request was made, an additional 22 cases were filed throughout the country. As explained by Plaintiffs' counsel at the February 27, 2015 hearing, these additional cases were filed in anticipation of a favorable ruling on its request for MDL certification and transfer to the Central District of California and for that reason were not filed in some other single District because of a concern that such centralization

2

hundreds (if not thousands) more before the running of statute of limitations periods. Doc. No. 22 at 1.[2] To address this situation, Plaintiffs outlined to Lilly what they regarded as the "informal coordination" needed to appropriately manage the pending and anticipated Cymbalta withdrawal cases. Under Plaintiffs' first proposal, Lilly would toll the statute of limitations as to all cases until December 31, 2015 in exchange for HIPAA releases from any future claimant. Lilly rejected that proposal and Plaintiffs then proposed that all existing cases would be voluntarily dismissed and refiled, together with any future cases in the Southern District of Indiana, where Lilly is headquartered. Lilly rejected that proposal as well. *See* Doc. No. 22-1, Exhibits F and H. Plaintiffs' counsel then decided to accomplish centralization without Lilly's cooperation by filing all future cases, estimated in the thousands, in the Southern District of Indiana. They also intend to seek transfer to that District of the other pending cases, in which they have or will file similar Section 1404(a) transfer motions.[3]

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C.A. § 1404 (West). In assessing the appropriateness of a transfer under Section 1404(a), courts have looked to a variety of considerations, including: (1) a plaintiff's choice of venue; (2)

---

would have undercut their request for MDL certification and transfer to the Central District of California.

[2] Lilly raises an eyebrow to the number of potential cases that Plaintiffs' counsel suggest are waiting in the wings. Doc. No. 22-1, Exhibit C at 14 ("Response to Plaintiffs' Motion Pursuant to 28 U.S.C. § 1407 to Transfer Related Actions for Coordinated Pretrial Proceedings").

[3] Although again unclear from the briefing, the Court assumes that Plaintiffs' counsel does not intend to seek transfer of the pending two cases in the Central District of California which are scheduled to be tried in May, 2015.

3

witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Boeser, Inc.*, No. 1:14 CV 1458 JCC/TC, 2015 WL 402992, at *3 (E.D. Va. Jan. 28, 2015). Overall, the party seeking to have a case transferred must show that "the balance of convenience among all parties and witnesses is beyond dead center, and strongly favors the transfer sought." *Mullins v. Equifax Info. Servs., LLC*, No. CIV.A. 3:05CV888, 2006 WL 1214024, at *5 (E.D. Va. Apr. 28, 2006) (internal citation omitted).

Assessed with respect to the considerations that govern a Section 1404(a) transfer motion, the parties' positions with respect to transfer are unusual. Plaintiffs have moved for transfer from their home district, where they chose to file, a decision that is normally entitled to great deference, particularly where, as here, many of Plaintiffs' witnesses are located in this District, their claims are governed by the law of the forum and their own inconvenience will be increased, were the Motion granted. On the other hand, Lilly objects to the transfer of these cases from the plaintiffs' home District to its own home District, the Southern District of Indiana, where many of its own witnesses and documents are located and its own inconvenience would be lessened. What explains the parties' positions is their respective litigation strategies concerning the Cymbalta withdrawal cases generally, which transcend considerations limited to the two particular cases pending in this Court. And for that purpose, both parties rely primarily on the amorphous "interests of justice" prong of Section 1404(a) to support their position based on developments, facts and prospects beyond those that strictly apply to these two cases.

Plaintiffs point to the practical consequences associated with the prospects of litigating throughout the country dozens of cases in multiple courts, while thousands of similar claims against the same defendant will be centralized through future filings in the Southern District of

4

Indiana. In that regard, Plaintiffs claim that unless these pending cases are centralized with future filings in Indiana, they will incur costs that could through centralization be avoided and which, if not avoided, substantially compromise, if not eliminate, the economic viability of proceeding with those cases. They also claim that absent centralization, claimants face the prospect of inconsistent rulings on evidentiary and other issues and the likelihood that they will be unable to participate in and benefit from any global settlements or approaches designed to efficiently resolve the centralized cases. From Plaintiffs' perspective, there is no significant or substantial prejudice to requiring a defendant to litigate in its own hometown and that Lilly's opposition to doing so under the circumstances of this case stems simply from a litigation strategy to increase the per case cost with the goal of ending these cases, not on the merits, but through the economic attrition that would necessarily result from Plaintiffs' inability to centralize these cases in one District and realize "economies of scale."

With respect to the Panel's decision, Plaintiffs' argue that the MDL's panel was based on the small number of cases that had been filed and the particular posture of those cases, and that circumstances have substantially changed since the Panel's decision. In that regard, the Plaintiffs represent that thousands of cases will likely be filed in the Southern District of Indiana, and that as evidenced by the outstanding discovery issues in this case, the Panel's assumption that Lilly had already provided all required discovery on common issues was wrong. They also point to what they contend will be the multiplicity of outstanding issues pertaining to discovery, such as the scope of discovery, and the terms of protective orders, as well as *Daubert* challenges, that are best dealt with on a consolidated or centralized basis in a single District before a single judge.

5

Lilly, on the other hand, argues under the "interests of justice" banner that Plaintiffs are improperly seeking to "re-litigate the JPML's order" and "employ § 1404 to achieve what [they] could not under § 1407." Doc. No. 24 at 1-2. Lilly complains in this regard that that it would be improper for this Court to essentially second guess the decision of the MDL panel that these cases can be effectively dealt with without centralization since the Plaintiffs rely on nothing more than arguments that were considered and rejected by the Panel. *See, e.g., In re E. Dist. Repetitive Stress Injury Litig.,* 850 F. Supp. 188 (E.D.N.Y. 1994); *Bristow v. Lycoming Engines,* No. CIV. S-06-1947 LKK/GGH, 2007 WL 1106098 (E.D. Ca. Apr. 10, 2007). Lilly also argues, similar to some of its arguments before the panel, that the two cases pending in this Court have already substantially progressed under the Court's litigation schedule, under which discovery is to be concluded by May15, 2015. Lilly also argues that it is fundamentally unfair to have transferred, over its objection, a case from a district, selected by the plaintiffs, which, from its perspective, provides significant, legitimate advantages in adjudicating the cases on the merits.[4] Those advantages, according to Lilly, include the ability to have these two cases finally adjudicated in a predictable and relative quick timeframe in this Court, and the ability to present to the jury the live, in Court testimony of critical witnesses, primarily, Plaintiffs' prescribing physicians, whose knowledge of the risks involved, and willingness to prescribe Cymbalta,

---

[4] Lilly correctly observes that while courts extend substantial weight and deference to a plaintiff's first choice of venue, a plaintiff's subsequent choices are entitled to much less weight and deference. *See, e.g., Bobosky v. Adidas AG,* No. CV 10-630-PK, 2010 WL 4853295, at *6 (D. Or. Oct. 8, 2010) *report and recommendation adopted,* No. CIV 10-630-PK, 2010 WL 4828392 (D. Or. Nov. 18, 2010); *Orrell v. Motorcarparts of Am., Inc.,* No. CIV 306CV418-C, 2007 WL 895503, at *3 (W.D.N.C. Mar. 22, 2007) ("the undersigned is unaware of []any Fourth Circuit authority considering whether a plaintiff's *second* choice of forum is entitled to any, much less great, weight."). Rather, the plaintiff must show some change in circumstances that justifies the court's extending some deference to her new choice of forum. *See Orrell, supra,* at *4.

regardless of those risks, will likely be dispositive of liability *vel non.* Lilly contends that the centralization of hundreds or thousands of cases undermines its ability to actually adjudicate individual cases on the merits because centralization will effectively shield these cases from an individualized adjudication on the merits of each case and the history of these cases to date is that when a case is actually litigated on the merits, it has been either dismissed by the Court on summary judgment or voluntarily dismissed by the claimant. *See, e.g., McDowell v. Eli Lilly & Co.,* --- F. Supp. 3d ---, 2014 WL 5801604 (S.D.N.Y. Nov. 7, 2014); *Carnes v. Eli Lilly & Co.,* No. 0:13-591-CMC, 2013 WL 6622915, at *7 (D.S.C. Dec. 16, 2013).

The parties also fundamentally depart on whether the Cymbata withdrawal cases, as a group, present common issues of fact that will predominate over individualized issues. On the one hand, there are no doubt common issues of fact and law that would best be resolved in a single district in order to eliminate the prospects of inconsistent judgments by different courts. Those issues include issues of general causation including the adequacy of the labeling and the withdrawal profile of Cymbalta. On the other hand, there is also no doubt these cases will necessarily involve critical and dispositive issues pertaining to individualized causation based on the knowledge of the health care providers that have prescribed Cymbalta, as well as the extent of damages suffered as a result of any proven liability.[5]

The Court has two central concerns. The first involves the public interest to expeditiously adjudicate these two cases, even if they are related to many others, according to a well-known time schedule in this Court which will run its course in a matter of months. That

---

[5] The views of one court on this issue is reflected in its denial of class certification with respect to Cymbalta withdrawal cases. *See Saavedra v. Eli Lilly & Co.,* No. 2:12-CV-9366-SVW-MAN, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) (denying class certification in a case filed on October 31, 2012).

concern is underscored by the likelihood that by transferring these two cases to Indiana, all parties will be disadvantaged in their ability to have these two particular cases adjudicated within a timeframe that would have some proximity to that opportunity in this Court. Second, the Court is hesitant to significantly add to the burden on the Southern District of Indiana, particularly since the parties have the ability in these two cases to resolve discovery and other issues that could expedite the disposition of cases generally. In assessing these competing positions, the Court has considered a number of realities:

(1) As of the filing of the Motion, there was only one case filed in the Southern District of Indiana, which had not yet been served. Plaintiffs' counsels' projections notwithstanding, the Court simply cannot determine with any confidence at this point whether the transfer of these two cases will be part and parcel of an overall centralization of cases, and if so how many such cases will be centralized.

(2) The Court's ruling on the pending transfer motions will not affect whether or to what extent future cases are filed in the Southern District of Indiana, a decision within the sole control of those plaintiffs and their counsel.

(3) Were hundreds or thousands of cases filed within the Southern District of Indiana, as Plaintiffs forecast, there would no doubt be instituted some type of case management procedures designed to resolve those cases as a group and there would be little additional burden imposed upon the Southern District of Indiana or unfair prejudice to Lilly by granting Plaintiffs' request that these two additional cases be transferred.

(4) Plaintiffs are willing to forego the advantages to them of proceeding in their home District and there are substantial cost and other advantages to Lilly to litigating these cases in its home District.

(5) On-going discovery in this District will provide an opportunity on a relatively expedited basis to complete discovery on common issues that will be useable in all Cymbalta withdrawal cases and for that reason will contribute to the efficient case management of those cases.

(6) Absent centralization, there will be a duplication of effort in the routine aspects of each case, resulting in a substantial increase in the per case cost of those cases not centralized because of travel and other costs that could be avoided or broadly shared were the cases included within a group of centralized cases.

(7) Transfer of these two cases would likely delay the ultimate adjudication of these two cases relative to when that final adjudication would occur in this District.

At this point, based on the considerations discussed above, the Court cannot conclude that the transfer of these two cases to the Southern District of Indiana will further "the interests of justice," or indeed accomplish Plaintiffs' intended objectives. The Court will therefore defer a final ruling on the Motion to Transfer until after discovery has ended on May 15, at which time, the Court will consider the Motion to Transfer in light of the filings that have occurred in the Southern District of Indiana and any case management procedures or rulings that have been put in place with respect to those cases. Accordingly, it is hereby

ORDERED that Plaintiff's Motion to Transfer the Case [Doc. No. 23] be, and the same hereby is, DEFERRED pending the completion of discovery.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
_____
Anthony J. Trenga
United States District Judge

March 4, 2015
Alexandria, Virginia