# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| JANINE ALI,<br><br>        Plaintiff,<br><br>   v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>        Defendant. | Case No. 1:14-cv-01615-AJT-JFA<br><br>Hon. Anthony J. Trenga<br>Hon. John F. Anderson<br><br>**OPPOSITION TO DEFENDANT'S MOTION FOR ORDER TO ALLOW THE NOTICING PARTY TO FIRST QUESTION A DEPONENT** |
| GILDA HAGAN-BROWN,<br><br>        Plaintiff,<br><br>   v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>       Defendant. | Case No. 1:14-cv-01614-AJT-JFA<br><br>Hon. Anthony J. Trenga<br>Hon. John F. Anderson<br><br>**OPPOSITION TO DEFENDANT'S MOTION FOR ORDER TO ALLOW THE NOTICING PARTY TO FIRST QUESTION A DEPONENT** |

## INTRODUCTION

It is undisputed that Plaintiffs properly subpoenaed and noticed the depositions of the two physicians who prescribed Cymbalta to Plaintiffs Ali and Hagan-Brown. It is also undisputed that the depositions are being taken pursuant to Plaintiffs' subpoenas and deposition notice. The only point at issue here is whether Plaintiffs should be allowed to ask questions first during the first hour of each doctors' deposition, before Lilly is given two hours to cross examine the witnesses.

Plaintiffs bear the burden of proving causation in these cases, and failure to do so is dispositive. *See e.g. Carnes v. Eli Lilly & Co.*, No. CA 0:13-591-CMC, 2013 WL 6622915, at *5 (D.S.C. Dec. 16, 2013); *McDowell v. Eli Lilly & Co.*, No. 13 CIV. 3786, 2014 WL 5801604, at *16 (S.D.N.Y. Nov. 7, 2014) *reconsideration denied,* No. 13 CIV. 3786, 2015 WL 845720 (S.D.N.Y. Feb. 26, 2015). In both of these cases, Defendant Eli Lilly and Company ("Lilly") was successful in obtaining summary judgment by getting the prescribing doctors to testify that they knew of the true risk of withdrawal, notwithstanding the misleading Cymbalta label. In other words, Lilly was able to obtain summary judgment by breaking the chain of causation.

As these cases demonstrate, the testimony of the prescribing physician can be dispositive. And, Plaintiffs bear the burden of obtaining testimony from the prescribing physician to overcome Lilly's challenges to causation. Plaintiffs believe that, in light of this burden and the fact that Lilly has been able to communicate with prescribers through significant direct-to-prescriber promotion about Cymbalta, Plaintiffs should be allowed to question the prescribing physicians first, i.e., Plaintiffs should be given the chance to establish causation before Lilly has the chance to try to undermine it.

Lilly argues, however, that because it emailed deposition notices on February 24, 2015,

noticing depositions for all the doctors identified in Plaintiffs' initial disclosures for dates at the end of April, without a subpoena, it is entitled to ask each doctor questions first. This argument, however, is deeply flawed and disingenuous.

*First*, the priority of asking a deponent questions is not determined by who serves a deposition notice first. "The priority rule, which conferred priority on the party who first served notice of taking a deposition, was abolished by Fed. R. Civ. P. 26(d) in 1970." *See Occidental Chem. Corp. v. OHM Remediation Servs.*, 168 F.R.D. 13, 14 (W.D.N.Y. 1996) (citing *Monacello v. City of Philadelphia*, No. CIV.A. 87-2380, 1988 WL 28242, at *1 (E.D. Pa. Mar. 22, 1988) and *United States v. Bartesch*, 110 F.R.D. 128, 129 (N.D. Ill. 1986)). Simply because Lilly emailed a piece of paper stating a desire to depose a person does confer priority of questioning. If so, Plaintiffs could simply notice depositions of every conceivable third-party and prevent Lilly from being able to ever question a witness first. That is not how the Rules work.

*Second*, Lilly's motion fails to discuss the fact that Plaintiffs' counsel expressly told Lilly, prior to issuing the deposition notices of Plaintiffs' prescribers, that Plaintiffs intended to depose the prescribers and ask questions first, and invited Lilly to engage in a meet-and-confer on the topic. Instead of responding to this good-faith effort to address this issue, Lilly simply emailed deposition notices with arbitrary dates and times on them. In other words, Lilly was on notice before serving a deposition notice that Plaintiffs intended to ask questions first. Lilly's use of the deposition notice was nothing more than posturing.

As it stands, Plaintiffs served valid subpoenas and valid deposition notices. Lilly will attend these depositions and will be given the opportunity to cross examine the doctors for two hours after Plaintiff's are given the chance to ask questions for one hour. Lilly's effort to undermine this approach because it emailed a deposition notice with an arbitrary date, over

2

Plaintiff's objections and without any consultation with the doctors or parties, should be rejected.

## BACKGROUND

Remarkably, Lilly's motion fails to mention or discuss the considerable discussions the parties exchanged about this issue. They are relevant because they show that Lilly's deposition notice was nothing but a ploy to gain a misplaced tactical advantage.

On February 18, 2105, before Lilly served any deposition notice in either of these cases, Plaintiffs' counsel sent an email to Lilly regarding "Cymbalta Withdrawal Litigation – Doctor Depositions." Exhibit 1 at 1-2. In the email, Plaintiffs' counsel stated that "Plaintiffs also intend to notice the physicians' depositions and to fully depose each of these doctors as part of developing their case-in-chief." *Id.* at 1. Plaintiffs' counsel further explained that:

> Plaintiffs believe they are entitled to ask physicians questions first at each deposition. As you know, Plaintiffs bear the burden of proof in these cases, and these depositions will more than likely be used for trial. As such, and in accord with the way testimony would be presented to the jury, we believe Plaintiff should conduct the initial direct examination. Moreover, considering Lilly's unfettered access to these physicians in marketing Cymbalta for over a decade, allowing Plaintiffs to question the physician first is only fair. Please advise if Lilly is agreeable to this.

*Id.*

Five days later, on February 23, 2015 at 1:28 PM (PST), disregarding Plaintiffs' counsel's email, Lilly served deposition notices for Dr. Jayasree Patla (Exhibit 3), Dr. Thonia Hafez Gab-Allah (Exhibit 4), Dr. Navera R. Ahmad (Exhibit 5), and Dr. Mohammed Bahadori (Exhibit 6). The deposition notices were issued and served without any consultation with Plaintiffs' counsel or the physicians themselves, and set the depositions for April 27, 28, 29, and 30, 2015, respectively—which, at that time, was approximately twenty-days after the parties

were required to exchange expert reports.[1] In other words, the deposition notices set arbitrary dates that were un-tethered to the actual discovery timetable.[2] Notably, Lilly never issued a subpoena on any of the doctors.

Later that day, at 7:31 PM (PST), Lilly's counsel sent a response to Plaintiffs' request to negotiate an appropriate sequence in questioning. *See* Exhibit 7 at 3. It consisted of one sentence: "we do not agree that you are entitled to proceed first with examination in these depositions[.]" *Id.* Lilly did not provide any substantive explanation or reasoning.

The next day, on February 24, 2015, Plaintiffs' counsel responded to Lilly's single line response:

> **Asking Questions First**
>
> Plaintiffs believe they are entitled to ask questions first and get the physician's state of knowledge on the record. For the purposes of this issue, we want to focus on the prescribing physician. Lilly argues in each case that each physician has "independent knowledge" of the risks of withdrawal, arguing that physicians have divined the true risks of withdrawal from common knowledge, their practice, and the U.S. label's "greater than or equal to 1%" language. Plaintiffs have a right to explore that issue before Lilly poisons the well by feeding the true risks to the physician and getting them to say "yeah, I guess I knew that…" This issue has been dispositive in two previous cases (*Carnes* and *McDowell*) and, since Plaintiff bears the burden of proof, Plaintiff should have the right to explore this area on the record *before* Lilly mounts its causation challenge. Fairness, justice, and commonsense dictate as much. Since Lilly opposes this, I believe we should tee up this issue for each court. I propose we first address this issue in the *Ali* and *Hagan-Brown* cases, since those are on the shortest runways. Please advise if you need a further meet and confer on this or if we can go ahead and file our motion as soon as possible.

*Id.* at 2. Once again, Plaintiffs stressed the importance of allowing Plaintiffs to ask questions first, considering how important the prescribing doctor's testimony is on an issue that had been dispositive in two prior cases. Lilly never responded to this email.

---

[1] This is noted because, in the Herrera and Hexum cases, Lilly stressed that it was absolutely essential to complete doctor depositions prior to the commencement of expert discovery, and used this fact to explain why it noticed an earlier deposition date than the one initially noticed by the plaintiffs in those cases.

[2] Indeed, two of these doctors—Dr. Patla and Dr. Hafez Gab-Allah—Lilly has no intention of actually deposing.

4

On Friday, April 3, 2015, counsel for the parties briefly discussed the status of organizing depositions of the Plaintiffs' prescribers, and Plaintiffs' counsel indicated that he was waiting to hear back for the physicians. *See* Wisner Decl. ¶ X. On Monday, April 6, 2015, Plaintiffs' counsel notified Lilly that one of the prescribing doctors, Dr. Bahadori would make himself available. Exhibit 12 at 3-4. Although Dr. Bahadori would only be available for three hours, Plaintiffs offered Lilly two of the three hours of deposition. *Id.* In response, Lilly's counsel accepted the two hours but stated: "As you know from Brett's email dated February 23, 2015 at 4:28PM ET, we have noticed the deposition of Dr. Bahadori and we intend to question Dr. Bahadori first during the first two hours of the three-hour window." *Id.* at 4. In response, Plaintiffs counsel's explained, again, why Plaintiffs should be allowed to questions first:

> In an email dated February 18, 2015 at 7:26 PM—before any deposition notice in this case—I notified Lilly that Plaintiffs would be asking questions first during the doctor depositions and that any deposition notice without any context or conference with counsel would be disregarded. The law is clear—deposition notices do not dictate who gets to ask questions first. *See United States v. Bartesch*, 110 F.R.D. 128, 129 (N.D. Ill. 1986) ("[I]t is clear that the priority rule, which confers priority on the party who first serves notice of taking a deposition, is abolished by Rule 26(d)."). It would be silly for the order of questioning to be dictated by whomever emails a pointless piece of paper first. The rules abandoned that approach. Notwithstanding, Brett felt compelled to disregard this email and serve a deposition notice on February 23, 2015. That notice has *no* bearing on who gets to ask questions first—especially since Lilly was on notice of Plaintiff's position to ask questions first before the deposition notice was issued. *See Occidental Chem. Corp. v. OHM Remediation Servs.*, 168 F.R.D. 13, 14 (W.D.N.Y. 1996). And to be clear, Plaintiff has not had any discussions with Dr. Bahadori about his treatment of Plaintiff so this is not a situation like *Lumpkin v. Kononov*, No. 2:12-CV-320, 2013 WL 1343666, at *1 (N.D. Ind. Apr. 3, 2013) where Plaintiff already knows Dr. Bahadori's testimony.
>
> Legally and practically, Plaintiff should be allowed to ask questions first. After all, Plaintiff has the burden to establish causation in this case and, thus, should be allowed to take the first shot at meeting that burden during the deposition. I explained this in a email over a month ago . . . Plaintiffs have the obligation to prove causation and thus have the right to present evidence first to meet that burden as in any court proceeding, e.g., a deposition.

5

> Attached you will find a deposition notice and a notice of an intent to serve a subpoena. I've already confirmed the date with Dr. Bahadori, so I plan to ask my hour of questions of him first starting at 9:00 a.m. on April 17, 2015 pursuant to a valid deposition notice and valid subpoena.

*Id.* at 2-3. Notwithstanding this position, Plaintiffs' counsel agreed to brief this issue for the Court should Lilly wish to file a motion. Lilly's counsel simply responded that Lilly would be filing a motion, again offering almost no reasoning for its position. *See id.*

As it stands, Plaintiffs have arranged for the depositions and served subpoenas on Dr. Ahmed and Dr. Bahadori, Plaintiff Ali's and Hagan-Brown's respective prescribers. Exhibits 9, 10, 11, and 12. Dr. Bahadori's deposition is set for Friday, April 17, 2015 at 9:00 am and Dr. Ahmed's deposition is set for Monday, April 20, 2015 at 4:00 pm. *See* Exhibits 9 at and 11. Plaintiffs have arranged for the court reporters and videographers and have agreed to allow Lilly to ask questions for two of the three hours of each deposition. The only issue here is whether Plaintiffs should be allowed to ask questions first pursuant to Plaintiff's deposition subpoena and deposition notice.

## ARGUMENT

**I.  Plaintiffs Should Be Allowed to Question the Prescribers Before Lilly Because Plaintiffs Bear the Burden of Establishing Causation and Allowing Lilly to Poison the Well Will Prejudice the Plaintiffs**

Lilly begins is motion with a false proposition of law: "the first party to notice a deposition may question the witness first." Lilly's Mot. at 2. This is *not* the law. As numerous courts explain, the priority of asking questions at a deposition is not determined by who noticed a deposition first, but rather is a discretionary decision by the Court:

> In the past, priority to question a witness was given to the party who issued the notice of deposition. *See United States v. Bartesch,* 110 F.R.D. 128, 129 (N.D.Ill.1986). ***This rule was abolished*** in the Advisory Committee Notes to the 1970 Amendments, which states:

6

> The principal effects of the new provision are first, to eliminate any fixed priority in the sequence of discovery, and second, to make clear and explicit the court's power to establish priority by an order issued in a particular case.

48 F.R.D. 487, 506 (1970).

"Under the federal rules, a discovery priority is not established based upon which party noticed a deposition first, but rather, Rule 26(d) authorizes the court to order the sequence of discovery upon motion." *Occidental Chemical Corp. v. OHM Remediation Services,* 168 F.R.D. 13, 14 (W.D.N.Y.1996) (citing *Meisch v. Fifth Transoceanic Shipping Company Limited,* 1994 WL 582960 at *1 (S.D.N.Y.1994)). Rule 26(d) grants the court wide discretion to set discovery schedules. *Bartesch,* 110 F.R.D. at 129.

*Lumpkin v. Kononov*, No. 2:12-CV-320, 2013 WL 1343666, at *1 (N.D. Ind. Apr. 3, 2013) (emphasis added); *accord Arneauld v. Pentair, Inc.*, No. CV-11-3891 SJF ETB, 2012 WL 5932956, at *10 (E.D.N.Y. Nov. 26, 2012); *Pardee v. E.I. DuPont De Nemours & Co.*, No. 07-CV-0268S(SR), 2008 WL 907367, at *3 (W.D.N.Y. Mar. 31, 2008); *Brady v. Grendene USA, Inc.*, No. 12CV604-GPC KSC, 2014 WL 4925578, at *4 (S.D. Cal. Sept. 26, 2014). The cases cited by Lilly suggesting that the old priority rule is still in effect are either incorrect as a matter of law or are merely examples of courts exercising their discretion to give priority to the party that first noticed a deposition. There is, however, no priority rule any more, and the issue of which party should be allowed to question a deponent first turns on issues of fairness and justice. *See Lumpkin*, 2013 WL 1343666, at *1.

Here, fairness and justice indicate that Plaintiffs should be allowed to question the Plaintiffs' prescribers before Lilly.

First, the issue of causation is an important one and potentially dispositive for plaintiffs asserting personal injury claims related to Cymbalta. *See e.g.*, *Carnes*, 2013 WL 6622915, at *5 (granting summary judgment because treating physician testified that a stronger warning would

7

not have made any difference); *McDowell*, 2014 WL 5801604, at *16 (same).[3] In the face of rulings such as these, Plaintiffs should be given the opportunity to establish causation before Lilly has a chance to attempt to defeat it.[4] Plaintiffs must show that Lilly's failure-to-warn played a substantial role in causing the Plaintiffs' injuries. Often, although not always, causation is established through the testimony of the prescribing doctor. Plaintiffs can establish causation by showing that a stronger warning would have (1) altered the way the prescribing doctor considered the risks and benefits of the medication, (2) prompted the doctor to relay that stronger risk information to his or her patient (and the patient would have refused the treatment), or (3) resulted in the doctor not prescribing Cymbalta to his patient. In the context of a deposition, Plaintiffs should be allowed to try and establish these facts before Lilly feeds information to the doctor through its examination. And, to be clear, Plaintiffs have had no substantive conversations with the prescribers about these issues and, thus, does not know how they will testify.

For example, Plaintiffs plan to show each doctor the Cymbalta label and ask them what they understand the Cymbalta label to mean. This testimony will be solicited without reference to the undisclosed data or information. Then, Plaintiffs will show the true data to the doctor and ask if his or her understanding of the risks comports with the data. If, however, Lilly is allowed to question first, Lilly will feed the true Cymbalta risk to the physician and then ask him what he understands the risks are. In other words, Lilly can spoil the doctor's testimony and make it more likely that the doctor will claim that he or she knew the true risks the whole time or worse, allow the doctor to examine the Cymbalta label through the prism of the truth, not in the context

---

[3] As will invariably be presented to the Court in the future, Plaintiffs believe that these decisions are legally incorrect and deeply flawed. The merits of these decisions will be addressed at a later day.

[4] Plaintiffs claim no priority to questioning any other third-party in this litigation. This request to ask questions first is limited to the prescribing doctors.

8

of what the doctor actually knew at the time he or she prescribed Cymbalta.

Second, unlike Plaintiffs or Plaintiffs' counsel, Lilly has been communicating directly with each physician about Cymbalta and its risks for years through its direct-to-prescriber marketing and promotion. Dr. Ahmed and Dr. Bahadori have, collectively, been detailed[5] by over fifteen sales representatives about Cymbalta. Exhibit 14 at 6 (Lilly's response to Plaintiff Ali's Interrogatory No. 10); Exhibit 15 at 6 (Lilly's response to Plaintiff Hagan-Brown's Interrogatory No. 10). For years, Lilly had, and continues to have, unfettered access to these physicians to promote Cymbalta, convey the benefits and risks of the drug, and develop goodwill. Walking into the deposition, the physicians will have already been exposed to Lilly's promotion and representations about Cymbalta. *See Lumpkin*, 2013 WL 1343666, at *1 (allowing defendant to ask questions of third-party witness first, even though plaintiff issued the subpoena, because plaintiff had unique access to the third-party witness and was considered to be the plaintiff's witness). Indeed, Lilly has detailed information about each doctor's prescribing habits and knows what information Lilly gave to each doctor over the last decade about Cymbalta. Plaintiffs should be given an opportunity to address that longstanding relationship before Lilly has the chance to poison the well in the context of this case.

Third, Lilly's deposition "notice" should be given little (if any) deference. Several days prior to Lilly's deposition notice, Plaintiffs attempted to open up a dialogue about questioning priority and admonished Lilly that issuing pointless deposition notices would be ignored. Instead of engaging Plaintiffs on the issue, however, Lilly completely disregarded Plaintiffs' efforts to meet-and-confer, and served deposition notices with arbitrary and illogical deposition dates,

---

[5] "Detailing is the term used to denote the practice of pharmaceutical representatives visiting the offices of physicians or otherwise contacting physicians to promote their company's drugs and/or medical devices." *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 387 n.5 (9th Cir. 2011) *aff'd,* 132 S. Ct. 2156 (2012).

without a subpoena. Discovery should not be some game where litigants are allowed to "call dibs" on witnesses, particularly when opposing counsel is trying in good faith to broker a reasonable compromise and tether the progress of discovery to the legal and factual realities of the lawsuit. This type of gamesmanship should not be rewarded—indeed, it should be eschewed.

Fourth, the doctors are being deposed subject to Plaintiffs' subpoena, not Lilly's. Although Lilly subpoenaed each physician to collect medical records, Lilly never subpoenaed the doctors for a deposition. Plaintiffs are paying for the court reporters, videographers, and the doctor's fees for the first hour of deposition. It would be unfair to supplant Plaintiffs' valid subpoenas and deposition notices because Lilly emailed a pointless piece of paper over Plaintiffs' objections without any regard for ongoing meet-and-confer efforts.

Finally, Lilly has not and cannot articulate any prejudice it will suffer should Plaintiffs be allowed to ask each doctor questions first. Plaintiffs have already given Lilly two thirds of the available time during the deposition to cross-examine the doctors. Lilly is free to cross examine the doctors as it sees fit, consistent with the way testimony will be presented at trial. Conversely, as explained above, Plaintiffs are likely to suffer prejudice should Lilly be allowed to attack causation before Plaintiffs even have the opportunity to establish it—particularly in light of the extensive promotion by Lilly representatives to each physician.

## II. Lilly's Assertions Concerning Prior Legal Positions by Different Lawyers in a Different Case Should Have No Bearing on this Discovery Dispute

Lilly relies heavily on a statement made by the attorneys representing the plaintiffs in *Herrera v. Eli Lilly and Company*, No. 2:13-cv-02701-SVW-MAN (C.D. Cal.) and *Hexum v. Eli Lilly and Company*, No. 2:13-cv-02702-SVW-MAN (C.D. Cal.) to argue that the Court should "hold Plaintiff's counsel to the position they took in the California actions[.]" Mot. at 2. There is, however, a serious flaw with this argument—Plaintiffs' counsel in this case was not counsel

of record in *Herrera* and *Hexum* when this discovery dispute arose in those cases[6] and the attorney who represented *Herrera* and *Hexum* in their discovery dispute only entered an appearance in these cases after this discovery issue arose.[7] Lilly is apparently trying to impute arguments made by a different attorney in a different case to Plaintiffs in this case—a prospect that is ripe for misuse and abuse.

More importantly, this argument ignores the fact that Plaintiffs' counsel in this case expressly attempted to avoid this "first to notice" malarkey by reaching out to Lilly to figure out an amicable solution. Plaintiffs' counsel felt that the priority of questioning of third-party witnesses should not be dictated by paper pushing, but by the appropriateness of the case. Lilly just ignored this overture. If, for example, Plaintiffs' counsel were able to meet and discuss these cases with the doctors prior to their depositions, then there might be a legitimate dispute about who should be able to ask the doctor questions first—one that would require the balancing of several factors. Here, however, where Plaintiffs are limited and have had no substantive communications with the doctors, fairness and justice militate in favor of allowing the Plaintiffs, i.e., the party with the burden of proof, to ask questions first.

## **CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that this Court deny Lilly's motion and allow Plaintiffs to ask questions for the first hour during the depositions of Dr. Ahmed and Dr. Bahadori.

---

[6] Specifically, R. Brent Wisner entered an appearance in the California cases on February 24, 2015, long after the "order of questioning" issue was presented and resolved by the California court.

[7] Specifically, T. Matt Leckman who represented *Herrera* and *Hexum* in their discovery dispute filed a motion for *pro hac* admission to these cases on April 2, 2015.

11

DATED:  April 14, 2015                Respectfully submitted,

**MILLER LEGAL**

/s/ Peter A. Miller
Peter A. Miller, Esq.
Va. Bar 47822
pmiller@millerlegalllc.com
175 S. Pantops Drive, Ste. 301
Charlottesville, VA 22911
Tele (434) 529-6909
Fax (888) 830-1488

**BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**
R. Brent Wisner, Esq. (*pro hac vice*)
rbwisner@baumhedlundlaw.com
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel:  (310) 207-3233
Fax:  (310) 820-7444

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of April, 2015, a true copy of the foregoing OPPOSITION TO DEFENDANT'S MOTION FOR ORDER TO ALLOW THE NOTICING PARTY TO FIRST QUESTION A DEPONENT was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

Jeffrey Todd Bozman
Michael X. Imbroscio *(pro hac vice)*
Phyllis A. Jones *(pro hac vice)*
Brett C. Reynolds *(pro hac vice)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tele (202) 662-5335
Fax (202) 778-5535

/s/ Peter A. Miller
Peter A. Miller
MILLER LEGAL LLC
Va. Bar 47822
175 S. Pantops Drive, Ste. 301
Charlottesville, VA 22911
Tele (434) 529-6909
Fax (888) 830-1488
pmiller@millerlegalllc.com